Southard J.
delivered the opinion of the court.
Soutiiard J.
The action below, was brought M’Cormiek, to recover “the balance of book account, dollars, 53 cents.” The defendant’s plea, first denies owing any thing, and then claims,
*“On book account, as private dealings since January 22,1816, - $48 27
To serving summons, for which is on defendant’s cost-book, 35 summons, 3 warrants, - - 11 53
To an order given on me, to Andrew Steelman, 6 21
$66 01,”
for which he claims judgment.
At the trial, the record states, that a challenge to the favour was made by the plaintiff, to Morris Pilgrim, one of the jurors; “ for which reason ” says the justice, “ I qualified Joseph Ingersoll, Uriah Camp, and Joshua Smith, three of said jurors, to try the challenge ;” who, upon consultation, reported the challenge not true.
As the trial progressed, “ the defendant produced his book of account, who was requested by the plaintiff, to prove his said book. The defendant called on me, (the justice) to prove his books, as he had a settlement, drawn *78 by me, to him in his book, for more than one year past. motion being somewhat singular, I stated to the jury, under the oath of my office, in the manner following: that the books'of the said defendant produced, in support of his action, was the defendant’s original book of account, and turning to the settlement, which I had drawn in the said book, I shewed it to the jury, who appeared to be all satisfied. I admitted the defendant’s book to go before the jury, from my own knowledge, as well as did the plaintiff.”
The verdict and judgment were in favour of the defendant for 33 dollars, 56 cents.
Upon the case thus stated, there seem to be three exceptions. 1. The account, on which the recovery is had, is insufficient. 2. The challenge was incorrectly tried. 3. 'The justice gave evidence in his own court, without being ¡sworn.
1. The statute directs that “ the defendant, if he have .any account or demand against the plaintiff, shall be permitted to discount or set off the same against the account, debt or demand of such plaintiff.” And if a balance be found in his favour, judgment may be rendered, accordingly for him. The words of the act, permitting the defendant to file a copy of his account or state of his demand, are the same as those which authorize and direct the plaintiff, to file his, on or before the return day of the ^summons. The construction of the act, requires that they should be equally precise and specific. The object of both is the same; to apprise the other party of the claim against him. The effect of both is the same, to enable the party to have a recovery and judgment in his favour. They must be “ a copy,” not the substance, amount or balance of the account claimed. They must contain the items, as entered in the book, that the opposite party, seeing the particulars, may be prepared to answer and defend, (a) They must be specific, intelligible and legal, that the opposite party may neither be entrapped, nor have an illegal recovery against him. Both the statute and the reason of the case, require this particularity; and *79 the decisions of this court are in conformity therewith. Many judgments have been reversed, because the of demand were not intelligible, not a copy of the account, or contained illegal items ; and the case of Walton v. Lippencott, Pen. 161, with many others, shew that the same rules have been applied to the pleas of the defendants, where they have served as the foundation of the judgment.
In the present case, the defendant obtained a judgment in his favour; and when we examine his plea, there is not one item, which is such as it ought to be. The first, is, “ on book account, 48 dollars, 27 centscontaining neither the articles nor the date. The second is, for serving 35 summonses and 3 warrants ; without specifying a single one: and the third is equally faulty. On such an account, no recovery ought to have been permitted.
2. The second exception is equally valid, though not noticed in the argument at the bar.
It is the high privilege of parties, to have their rights decided, by twelve men, who are free from the suspicion of bias or partiality; who are omni exceptione rnajores: and the right of challenging any one upon the panel, who does not come within that description; and having his challenge tried in the way pointed out by the law, is a valuable right, and ought to be strictly guarded. Any aberration from the legal mode of proceeding, ought at once to arrest the judgment. If one error be permitted, so may another, and the right becomes uncertain and worthless.
Where a challenge to the favour, is made, it must be determined by triors. “These triors, in case the first man called, be challenged, are two indifferent persons named by the court; and if they try one man, and find him indifferent, he shall be sworn; *and then he and the two triors, shall try the next; and when another is found indifferent, and sworn; the two triors shall be superceded, and the two first sworn on the jury, shall try the rest.” 1 Bl. Com. 363. This order, and this only, can be pursued. More than two triors, or more than two jurors, can in no case be sworn to try a challenge to a jury-man, but in the *80 particular case before mentioned, one juror, with the two may be sworn for this purpose.
Bo the rule thus laid down, I am aware of no exception. This number of triors, is as precisely and specifically pointed out, as the number of jury-men who must sit to try the cause; and it is as incorrect, to vary from the number in one instance, as in the other. A variance in either cannot be justified, and for the reason that the law has so prescribed—ita lex scripta est. Were fourteen men to be sworn on a jury, and to render an unanimous verdict, no hesitation would be felt in setting it aside; and why ? Because twelve only are to be sworn on a jury ; and because the two, who had been improperly sworn, might have influenced the rest and produced a verdict, which they would not otherwise have rendered. So, if three jurors are sworn, to try a challenge to a fourth, and were to make an unanimous report,- the proceeding must be declared illegal, because the law permits only two to pass on this matter, and the one who was improperly added to them, may have influenced their decision, and induced a report, which would not, otherwise, have been given.
Besides, if three may be sworn, so may six, or eight or ten, at the will or caprice of the justice, and a door be opened for the admission of much fraud and injustice. If the two first jurors do not suit the wishes or purposes of the party, or the justice, he may add so many and select such as will. The evils of such a course, are not readily counted. The right of challenge, can only be preserved pure, by confining it to the plain rules, which are so clearly defined. When, therefore, the justice swore three jurors, to try the challenge made to Morris Pilgrim, .he committed an erroi, which vitiates his judgment.
(a) The third exception, requires neither books nor argument to prove its validity. The justice gave evidence in his own court, without being sworn, and under his oath of office. This is the first occasion on which, I have heard, that the oath of office *taken by a judge, extends to his giving testimony in court. The proceeding was *81 altogether, incorrect and illegal. No parol evidence can be admitted, in a court of justice, but under the solemnity' of an oath. No justice can swear himself, or be a witness in his own court. If he knows that he is to be a witpess, he ought not to suffer the suit to be instituted before him. If, in the progress of the cause, he finds that he is an indispensable witness for either party, he ought to dismiss the suit, that it may be instituted where more perfect justice can be done.
Each then of these reasons, are sufficient to authorise a reversal, unless their force be obviated, by something which is found in the record. This has been supposed to be found, in the admission of the defendant’s books of account. The record states, that when defendant produced his books, the plaintiff required them to be proved; that the justice then gave to the jury, an account of his own knowledge of them, and adds, “ The jury appeared to be all satisfied, I admitted the defendant’s books to go before the jury, from my own knowledge, as well as did the plaintiff.” 1 perceive in this nothing to cure the errors. It is not that plain, explicit acknowledgment, which ought always to exist when evidence is given, by consent of parties. But waiving all objections to its want of clearness, two or three remarks respecting it, are worthy of consideration.
1. The state of demand, is radically defective; evidence whether legal or illegal, admitted or objected to, cannot cure it. Evidence can never support or destroy the legality of a state of demand. It must stand or fall by itself. Now, these books were the mere evidence, to support the state of demand; their admission can have no saving operation. If when admitted, they shewed that (he account filed was a true copy, they were themselves unworthy of regard, and ought to have been rejected by the jury; and if they shewed that the account filed, was not a true copy, it is not easy to perceive, how they could support it, or cure its defects. This admission, therefore, can have no bearing upon the first objection.
2. It does not touch the question, "whether it be legal to swear three jurors, to try a challenge. Nor
3. Do I think that an irregularity so gross, as is com *82 prised in the third reason, can be cured by the subsequent of *the fact, to be proven by the illegal testimony. It is manifest from the wording of the transcript, that this pretended admission, was the result and consequence of this illegal proceeding and testimony. The plaintiff, at first, doubted the books; he required them to be proved. The justice undertakes this task himself, and then admits them, on his own knowledge as well as did, the plaintiff. Now, how did the justice admit them? Not on the admission of the plaintiff, hut on his own knowledge. How did the plaintiff admit them ? Noton his own knowledge, but that oí the justice. Why did he waive his objection ? Because, the court, more learned than he, had declared that they were proper to go to the jury; and “ the jury appeared to be all satisfied;” and because he yielded to injustice there, he is to have no remedy here, against the grossest errors and violations of law. This would be to cure one error by another; or rather, to cure three errors, by the consequence resulting from one of them. Indeed, this admission, from the manner of its introduction, assumes the appearance of an effort, to evade the effect of previous irregularities-Whether so intended or not it ought not to produce that result, and therefore, the judgment ought to be reversed, upon all the grounds.
Judgment reversed.

 Doughty vs. Jones, Pen. *658.

 Outcalt vs. Rankin, 2 Gr. 33. Paterson vs. Schenck, 3. Gr. 434. Corlies vs. Van Note, 1 Har, 324.